UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------X
                           :
JOHN E. McCAULEY,          :
          Plaintiff,    :
                           :
     -against-        :   97 Civ. 7662 (LMM)
                           :   <u>MEMORANDUM AND</u>
                           :   <u>ORDER</u>
FIRST UNUM LIFE INSURANCE COMPANY, :
SOTHEBY'S HOLDINGS, INC.,       :
SOTHEBY'S, INC., and SOTHEBY'S   :
SERVICE CORP.               :
          Defendants.   :
                           :
-----------------------------------X

McKENNA, D.J.

Plaintiff John E. McCauley ("McCauley" or "Plaintiff") brings this action against Defendant First UNUM Life Insurance Company ("First UNUM" or "Defendant") for denial of his two claims for long term disability benefits and for wrongful conduct in connection with those denials.[1]

Defendant here moves for judgment on the administrative record affirming its denials of disability benefits, and Plaintiff cross-moves for summary judgment pursuant to Rule 56 of the Federal Rules of Civil

---

[1] Plaintiff originally sued Sotheby's Holdings, Inc., Sotheby's Inc., and Sotheby's Service Corp. (collectively, "Sotheby's") in addition to First UNUM. However, following the dismissal of the majority of Plaintiff's claims against Sotheby's, Sotheby's was terminated as a defendant by Stipulation and Order of Dismissal dated August 6, 2001. <u>McCauley v. First UNUM Life Ins. Co.</u>, 1998 WL 846121 (S.D.N.Y. Dec. 2, 1998). The only claims remaining before this court are against First UNUM.

Procedure. For the reasons set forth below, Defendant's
motion is GRANTED and Plaintiff's motion is DENIED.

## I. Background

**A. Facts**

John McCauley was serving as a Senior Vice President
and Director of the Tax Department at Sotheby's when he was
diagnosed with colon cancer in April 1991. (Pl.'s Mot. for
Summ. J. 2.) Following his diagnosis, McCauley underwent
surgery that resulted in a radical hemicolectomy and then
took short term disability leave from April 1991 through
July 1991, when he returned to work. On or about December
1991, Sotheby's relocated McCauley to Hamilton, Bermuda as
Senior Vice President and Chief Executive Officer of Fine
Art Insurance, Ltd.

In September 1992, following surgery for a liver
resection, Plaintiff again went on short term disability
leave through November 1992. Because of a severe liver
infection, he took short term disability leave from
December 1992 through February 1993. After returning to
work, McCauley went on short term disability leave for the
fourth time from April 1994 through June 1994 because of an
incisional hernia.

On November 23, 1994, McCauley notified Sotheby's that
he was unable to continue work and that he was filing for

long term disability benefits. At that point, he went out for the final time on short term disability leave for a period of three months.

McCauley's final day of work at Sotheby's was November 26, 1994. (A.R. 289.) At that point, Plaintiff was suffering from multiple ailments as a result both of the cancer itself and of its treatment. Because of the helicolectomy, the liver resection, and chemotherapy, McCauley experienced chronic diarrhea, chronic and acute renal impairment, incontinence, progressive vascular sclerosis, high cholesterol, insomnia, depression, and incisional scarring and pain.[2] (Pl.'s Mot. for Summ. J. 2-3.) McCauley remained under the care of Dr. James B. Dougherty, an oncologist at Memorial Sloan Kettering Cancer Center.

On or about February 23, 1995, just before the expiration of his final period of short term disability leave, McCauley applied for long term disability benefits from First UNUM (the "Group Claim"), which at the time provided Sotheby's employees with a long term disability insurance policy (the "Group Policy"). (A.R. 285-97.) On

---

[2] Although the section of the application completed by Sotheby's indicated that McCauley had stopped working because of colon cancer, he was not suffering from active cancer at the time of the application, and he remains cancer-free to this date. (A.R. 293, 287.) As McCauley has repeatedly asserted, "[t]he debilitating effects that [he] experience[s] result not from cancer but from the drastic measures used to effect a cure." (A.R. 460.)

the application, McCauley indicated that his occupation was "tax attorney." (A.R. 286.)

On or about March 15, 1995, Brigid O'Brien, Sotheby's Senior Manager of Benefits, telephoned First UNUM to discuss McCauley's application. First UNUM's notes regarding the conversation indicate that O'Brien referred to Plaintiff as a "crack pot" whom they "don't want to pay." (A.R. 296.) Soon thereafter, on March 20, 1995, Ms. O'Brien faxed First UNUM a newspaper advertisement placed by McCauley on March 1, 1995, offering his services as a tax attorney.[3] (A.R. 300-01.) In the course of its investigation of McCauley's application, First UNUM also uncovered a listing for McCauley as a tax attorney in a business-to-business telephone guide. (A.R. 352.)

On March 24, 1995, Dr. Dougherty, McCauley's primary physician, responded to First UNUM's inquiries regarding McCauley's symptoms and his work restrictions and limitations. (A.R. 345.) Dr. Dougherty's letter indicated that McCauley was restricted from "heavy lifting and extreme physical exertion" and from increased workload and increased hours because of his "fatigue syndrome, occasional nausea and pain in the right upper abdominal

---

[3] On March 22, 1995, Sotheby's sent a letter to First UNUM stating that it "did not intend to influence the outcome of your processing of John McCauley's L.T.D. application by sending you a copy of the advertisement placed by him." (A.R. 331.)

quadrant secondary to hepatic resection." (A.R. 345.) In response to First UNUM's inquiry regarding what had "changed in this claimant's condition in November of 1994 to render him disabled," Dr. Dougherty responded that McCauley "has had continued fatigue, intermittent nausea, and pain." (A.R. 344-45.)

On May 19, 1995, First UNUM denied McCauley's application for long term disability benefits. (A.R. 440-41.) The denial stated:

> Based on the medical information submitted by Dr. Dougherty and a review by our Medical Department, it is our determination that the medical information does not support an impairment of such severity that would preclude your ability to perform your occupation. Dr. Dougherty restricted you from heavy lifting and extreme physical exertion. He also limited increased workload and increased hours. These restrictions and limitations would not prevent you from performing the material duties of your sedentary occupation.

(A.R. 441.)

This denial letter informed Plaintiff that he could submit "new, additional information" to support his application and that he could seek a review of this decision by submitting a written request for review and including any additional "documentation you wish First UNUM to consider." (A.R. 440.) McCauley filed his appeal on June 14, 1995, and included detailed information about his medical condition and a copy of his 1988 job performance

review to demonstrate "what the material duties of [his] occupation were" before his 1991 diagnosis. (A.R. 459.)

On September 18, 1995, First UNUM upheld the denial of Plaintiff's long term disability application. (A.R. 472.) In its decision, First UNUM noted that the supplemental medical information provided additional detail but was not new information. (A.R. 472.) The decision further stated that all of the conditions mentioned in the supplemental information "were acknowledged by your physician on the initial application" and therefore had been taken into consideration in Dr. Dougherty's March 1994 statement of McCauley's restrictions and limitations. (A.R. 471.)

Although McCauley did not return to work following the denial of his application and appeal, Sotheby's continued to remit long term disability premium payments on his behalf through December 1995. In October 1995, however, Plaintiff accepted employment as General Counsel of IBJ Schroeder, Ltd., in Bermuda. Upon learning of this other employment, Sotheby's stopped paying McCauley's disability premiums, submitting the final premium payment for McCauley as of December 31, 1995.

On January 5, 1996, Sotheby's notified McCauley that he was eligible to enroll in a different policy through First UNUM (the "Conversion Policy"): "As your long term

disability benefits under Sotheby's Long Term Disability
Plan terminated on December 31, 1995, enclosed please find
LTD conversion information as well as UNUM's application
for conversion of long term disability insurance." The
letter noted that Plaintiff's termination date had been
indicated as December 31, 1995 on the application to First
UNUM but acknowledged that McCauley's "employment
terminated earlier (effective the date of your new
employment with IBJ Schroder)." Finally, the letter
informed McCauley that if he chose to apply for conversion
coverage, "UNUM must receive your completed application and
first quarterly premium/application fee by January 31,
1996."

On January 16, 1996, McCauley applied and made his
first premium payment for the Conversion Policy. (A.R. 78.)
First UNUM gave McCauley a conversion policy certificate on
March 7, 1996, which indicated that the plan's "effective
date" (i.e., the date that his employment with Sotheby's
terminated) was December 31, 1995. (A.R. 51-71.) First UNUM
continued to accept premium payments for the Conversion
Policy from McCauley throughout 1996.

On or about July 21, 1996, McCauley filed a claim for
long term disability benefits under the Conversion Policy
(the "Conversion Claim"). In the course of investigating

the Conversion Claim, First UNUM learned that Plaintiff had
not returned to work at Sotheby's since making the Group
Claim. His last day working at Sotheby's was November 26,
1994 -- over thirteen months before he applied for the
Conversion Policy. Although Sotheby's had continued to make
premium payments on McCauley's behalf, considered his
termination date to be December 31, 1995, and informed him
that he was eligible for the Conversion Policy if he
applied before January 31, 1996, First UNUM determined
that, by its criteria, his termination date was November
26, 1994. (A.R. 91-2.)

First UNUM therefore notified McCauley on December 10,
1996, that it disagreed with Sotheby's regarding the
effective date of his termination and that he was not
eligible for the Conversion Policy because, under First
UNUM's interpretation, he had ceased to work for Sotheby's
on November 26, 1994. (A.R. 91-2.) McCauley appealed this
decision, and on May 13, 1997, First UNUM affirmed its
decision to deny Plaintiff's claim under the Conversion
Policy. (A.R. 109-11.)

**B. Procedural Posture**

McCauley brought suit against both Sotheby's and First
UNUM alleging ten causes of action. By order dated December
2, 1998, most of Plaintiff's claims against Sotheby's were

dismissed on Sotheby's motion. See <u>McCauley v. First UNUM</u>
<u>Life Ins. Co.</u>, No. 97 Civ. 7662, 1988 WL 846121 (S.D.N.Y.
Dec. 2, 1998). On August 6, 2001, a stipulation and order
of dismissal pursuant to Rule 41(a)(2) of the Federal Rules
of Civil Procedure was filed dismissing with prejudice all
McCauley's remaining claims against Sotheby's.

Plaintiff's causes of action against First UNUM
remain. These include: the first cause of action, for
wrongful denial of his disability claims and for attorney's
fees under ERISA; the second cause of action, for denial of
his disability claims in bad faith and in violation of
ERISA; the fourth cause of action, for estoppel; the fifth
cause of action, for a declaratory judgment finding
Plaintiff disabled under the First UNUM policies; and,
finally, the eighth cause of action, for attorney's fees.

Plaintiff seeks review of Defendant's decisions
denying his applications for disability benefits. Two
motions are now before this Court: Defendant's motion for
judgment on the administrative record and Plaintiff's
cross-motion for summary judgment.

## II. Discussion

The Federal Rules of Civil Procedure do not include
motions for judgment on the administrative record. The
Second Circuit has observed, however, "that courts treat

motions for 'judgment on the administrative record' as
motions for summary judgment under Rule 56." Flanagan v.
First UNUM Life Ins., 170 Fed. Appx. 182, 184 (2d Cir.
2006) (citing Muller v. First UNUM Life Ins. Co., 341 F.3d
119, 124 (2d Cir. 2003)).

**A. Summary Judgment Standard**

Federal Rule of Civil Procedure 56(c) provides that a
moving party is entitled to summary judgment "if the
pleadings, depositions, answers to interrogatories, and
admissions on file, together with the affidavits, if any,
show that there is no genuine issue as to any material fact
and that the moving party is entitled to a judgment as a
matter of law." Fed. R. Civ. P. 56(c). "A dispute is not
'genuine' unless 'the evidence is such that a reasonable
jury could return a verdict for the nonmoving party.'"
Nabisco, Inc. v. Warner-Lambert Co., 220 F.3d 43, 45 (2d
Cir. 2000) (quoting Anderson v. Liberty Lobby, Inc., 477
U.S. 242, 248 (1986)). "A fact is 'material' for these
purposes if it 'might affect the outcome of the suit under
the governing law.'" Overton v. N.Y. State Div. of Military
& Naval Affairs, 373 F.3d 83, 89 (2d Cir. 2004) (quoting
Anderson, 477 U.S. at 248).

On a motion for summary judgment, a court must view
the record in the light most favorable to the nonmoving

party and resolve all ambiguities and draw all reasonable
inferences against the moving party. Matsushita Elec.
Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).
"[T]he mere existence of some alleged factual dispute . . .
will not defeat an otherwise properly supported motion for
summary judgment; the requirement is that there be no
genuine issue of material fact." Anderson, 477 U.S. at 247-
248. In this case, the question before the court is whether
there is a genuine issue of material fact as to whether
Defendant's decisions denying Plaintiff's applications for
long term disability benefits were improper.

**B. Standard of Review**

Courts review an ERISA plan administrator's decision
denying long term disability benefits using a *de novo*
standard of review "unless the benefit plan gives the
administrator . . . discretionary authority to determine
eligibility for benefits or to construe the terms of the
plan." Muller v. First UNUM Life Ins. Co., 341 F.3d 119,
123-24 (2d Cir. 2003). See also Firestone Tire & Rubber Co.
v. Bruch, 489 U.S. 101, 115 (1989). When the plan grants
discretion to the administrator, the court must review the
administrator's decision under an arbitrary and capricious
standard of review. Miller v. United Welfare Fund, 72 F.3d
1066, 1070 (2d Cir. 1995); Pagan v. NYNEX Pension Plan, 52

F.3d 438, 441 (2d Cir. 1995) ("where the written plan
documents confer upon a plan administrator the
discretionary authority to determine eligibility, we will
not disturb the administrator's ultimate conclusion unless
it is 'arbitrary and capricious.'").

In this case, both parties agree that the plan at
issue grants discretion to the plan administrator. (Pl.'s
Mot. for Summ. J. 11; Def.'s Mot. for J. on the Admin. R.
4.) The plan reserves to First UNUM "discretionary
authority both to determine an employee's eligibility for
benefits and to construe the terms of the policy." (A.R.
260.) The Court must therefore apply an arbitrary and
capricious standard of review to First UNUM's decision
unless an exception to that standard of review applies.
Plaintiff here argues that an exception has been triggered,
and a *de novo* standard of review should be applied, because
Defendant operated under a conflict of interest at the time
it denied Plaintiff's two applications for disability
benefits.

An exception to the arbitrary and capricious standard
of review applies when a plaintiff demonstrates that (1)
the administrator operated under a conflict of interest and
(2) the conflict actually "affected the reasonableness of
the administrator's decision." Sullivan v. LTV Aerospace &

Defense Co., 82 F.3d 1251, 1256 (2d Cir. 1996) (quoting Pagan v. NYNEX Pension Plan, 52 F.3d 438, 443 (2d Cir. 1995)); see also Pulvers v. First UNUM Life Ins. Co., 210 F.3d 89, 92 (2d Cir. 2000) ("In order to trigger *de novo* review of an administrator's decision when the plan itself grants discretion to the administrator, a plaintiff must show that the administrator was *in fact* influenced by the conflict of interest.") (internal quotation marks omitted).

When a plaintiff succeeds in demonstrating the existence of a conflict of interest, the court must make two inquiries to determine whether the plaintiff has satisfied the second prong: "first, whether the determination made by the administrator is reasonable, in light of possible competing interpretations of the plan" and "second, whether the evidence shows that the administrator was in fact influenced by such conflict." Sullivan, 83 F.3d at 1255-56. If the plaintiff satisfies the burden under this two-prong test, "the deference otherwise accorded the administrator's decision drops away and the court interprets the plan de novo." Id. at 1256.

Plaintiff concedes that, even following discovery, there is "no smoking gun" demonstrating that First UNUM was operating under a conflict of interest. (Pl.'s Reply 3.) Nevertheless, Plaintiff argues that Defendant "breached its

fiduciary duty" based on several factors that constitute a
conflict of interest. (Pl.'s Mot. for Summ. J. 11.)
Plaintiff seems to point to two specific bases for this
conflict of interest: Defendant's financial interest in the
outcome of the benefits decision and various alleged
procedural deficiencies in the evaluation of his claim.

Plaintiff argues that First UNUM operated under a
conflict of interest in making its decisions because it had
a financial interest in the outcome of the disability
benefits decision, asserting that "First UNUM denied Mr.
McCauley's disability benefits to protect First UNUM's
bottom line." (Pl.'s Mot. for Summ. J. 1.) First UNUM's
financial interest arises from its dual role in both
deciding the claim application and paying the claim.

The Second Circuit has repeatedly held that "[t]he
fact that UNUM served as both plan administrator and plan
insurer, although a factor to be weighed in determining
whether there has been an abuse of discretion, is alone
insufficient as a matter of law to trigger stricter
review." Pulvers, 210 F.3d at 92 (internal quotations
omitted). See also Jordan v. Ret. Comm. Of Rensselaer
Polytechnic Inst., 46 F.3d 1264, 1274 (2d Cir. 1995) ("the
simple fact that the administrator of a plan . . . happens
to be an 'arm of the employer' does not in itself create a

conflict of interest."). Therefore, Plaintiff's allegation that Defendant had a conflict of interest solely because of its financial interest does not justify application of a *de novo* standard of review.

Plaintiff also appears to argue that alleged procedural deficiencies in the processing of his claim "leave[] no doubt that [First UNUM] was influenced by its desire not to pay" and demonstrate Defendant's "failure to perform a reasonable claim investigation," thereby justifying the application of a heightened standard of review. (Pl.'s Reply 3.) In support of its argument that procedural irregularities may justify the application of a *de novo* standard of review, Plaintiff relies on <u>Buttram v. Central States, Southeast, & Southwest Areas Health & Welfare Fund</u>, 76 F.3d 896 (8th Cir. 1996). In <u>Buttram</u>, the Eighth Circuit held that it would apply a heightened standard of review rather than an arbitrary and capricious standard of review when the plaintiff demonstrated: "(1) that a serious procedural irregularity existed, which (2) caused a serious breach of the plan trustee's fiduciary duty to the plan beneficiary." <u>Id.</u> at 900.

The Second Circuit has not adopted such a specific test for determining when procedural deficiencies may merit the application of a *de novo* standard of review, but it has

twice found that procedural flaws constituted evidence of a conflict of interest under its Sullivan two-prong test. In DeFelice v. American International Life Assurance Co. of New York, the court held that the defendant's procedural practices, which included "destroying or discarding all records within minutes after hearing an appeal," evidenced "a blatant conflict" that required the court "to exercise fully [its] power to review de novo . . ." 112 F.3d 61, 65 (2d Cir. 1997). In Locher v. UNUM Life Insurance Company of America, the court observed that "[w]here sufficient procedures for initial or appellate review of a claim are lacking, there exist greater opportunities for conflicts of interest to be exacerbated . . ." 389 F.3d 288, 296 (2d Cir. 2004).

While procedural irregularities should be considered in determining whether a conflict of interest exists, Plaintiff has neither alleged nor introduced evidence to show any procedural irregularities that are severe or serious enough to justify applying a de novo standard of review under the law of this Circuit.[4] Plaintiff relies on Defendant's allegedly inadequate investigation,

---

[4] Notably, Plaintiff has also failed to meet the standard set forth by the Eighth Circuit in Buttram, the primary case on which Plaintiff relies, because Plaintiff has not demonstrated that any of the alleged procedural deficiencies caused Defendant to breach its fiduciary duty. See Buttram v. Central States, Southeast, & Southwest Areas Health & Welfare Fund, 76 F.3d 896, 900 (8th Cir. 1996).

specifically citing three procedural flaws: First UNUM's
alleged failure to follow its claim-handling procedures,
First UNUM's alleged spoliation of evidence, and First
UNUM's failure to have a physician review Plaintiff's
application and to defer to Plaintiff's physician's
findings. (Pl.'s Mot. for Summ. J. 11-12.) These alleged
procedural deficiencies do not constitute a conflict of
interest.

First, Plaintiff argues that First UNUM's conflict of
interest is evidenced by its failure to follow its own
claim-handling procedures. However, Plaintiff provides no
factual support for this allegation and does not specify
how Defendant violated its procedures. Moreover, this
assertion entirely fails the second prong of the Sullivan
standard. Plaintiff has made no showing that any failure to
follow handling procedures "in fact influenced" the
administrator's decision or rendered that decision
unreasonable. Sullivan, 82 F.3d at 1255. It is simply
insufficient to justify the application of a de novo
standard of review.

Second, Plaintiff asserts that First UNUM operated
under a conflict of interest because it spoliated evidence
by misplacing a document from the administrative record. In
DeFelice, the Second Circuit found a conflict of interest

where the plan administrator had an apparent practice of "destroying or discarding all records within minutes after hearing an appeal." 112 F.3d 61, 65 (2d Cir. 1997). Plaintiff's contention that one document is missing from the administrative record, without any evidence that the document was lost or misplaced in bad faith, does not rise to the level of a procedural irregularity that justifies the application of a heightened standard of review. Furthermore, even if it did qualify as a conflict, it also fails to satisfy the second prong of the standard because there is no indication that it actually influenced or rendered unreasonable Defendant's decision. Sullivan, 83 F.3d at 1255-56.

Finally, Plaintiff contends that First UNUM's conflict of interest is demonstrated by the fact that First UNUM "never had a doctor review Mr. McCauley's file, and said that it did, and ignored Mr. McCauley's attending physician's finding of disability." (Pl.'s Mot. for Summ. J. 14.) Again, these procedural flaws are insufficient evidence of a conflict of interest. Plaintiff's file was reviewed by medical professionals, including a nurse. There is no indication that Defendant's misstatement to the contrary was deliberate or in bad faith. Moreover, a plan administrator's disregarding a treating physician's

findings does not create "evidence of a conflict of interest that would itself authorize application of the de novo standard." Mood v. Prudential Ins. Co. of America, 379 F.Supp.2d 267, 280-81 (E.D.N.Y. 2005). In this case, Defendant actually did not discredit Plaintiff's physician's findings; rather, Defendant determined that, given the work restrictions and limitations identified by Plaintiff's physician, Plaintiff was still able to accomplish the duties of his occupation. Accordingly, the Court finds that none of these procedural irregularities demonstrates a conflict of interest that merits the application of a *de novo* standard of review.

Plaintiff here has failed to show that either Defendant's financial interest or the alleged procedural deficiencies constituted a conflict of interest. Even if Plaintiff had shown such a conflict, he has not met his burden of demonstrating that First UNUM's decisions denying his long term disability applications were unreasonable, nor has he presented any evidence that a conflict in fact affected those decisions. This Court therefore reviews Defendant's disability benefits decisions under an arbitrary and capricious standard of review.

**C. Evidence to Be Considered**

Plaintiff urges this Court to consider evidence

outside the administrative record, including evidence
obtained during discovery, in evaluating whether
Defendant's decision denying benefits should be overturned.
Specifically, Plaintiff contends that because First UNUM
failed to comply with ERISA notice regulations in denying
his applications this Court should consider evidence
outside the administrative record. (Pl.'s Mot. for Summ. J.
13.) Defendant in turn argues that this Court's review
should be limited to the administrative record, or, if
outside evidence is considered, that the Court should
consider only that evidence which is favorable to the
Defendant. (Def.'s Mot. For J. on the Admin. R. 1-2.)

The legal standard for considering evidence outside
the administrative record depends on the standard of review
to be applied to the claim. Compare Zervos v. Verizon New
York, Inc., 277 F.3d 635, 646 (2d Cir. 2002) ("where the
district court exercises de novo review of the plan
administrator's determination, the district court 'ought
not' to accept additional evidence absent 'good cause'")
(citing DeFelice v. American Int'l Life Assurance Co. of
NY, 112 F.3d 61, 66 (2d Cir. 1997)) with Miller v. United
Welfare Fund, 72 F.3d 1066, 1071 (2d Cir. 1995) ("a
district court's review under the arbitrary and capricious
standard is limited to the administrative record"). Thus,

when applying the arbitrary and capricious standard to an ERISA dispute, "the district court is limited to the materials that were available to the plan administrator at the time of the decision." Miller, 72 F.3d at 1071.[5]

When this Court granted Plaintiff's application for discovery beyond the administrative record, it did so specifically to allow Plaintiff the opportunity to gather and present evidence that Defendant was operating under a conflict of interest. The Court reviewed this evidence in determining whether First UNUM operated under a conflict of interest when investigating Plaintiff's claims. As discussed above, even with this expanded discovery, Plaintiff has failed to introduce sufficient evidence to meet his burden of demonstrating a conflict of interest, and, accordingly, the administrator's decision will be reviewed under an arbitrary and capricious standard. This

---

[5] Plaintiff contends that the Court should consider evidence outside the administrative record because Defendant "violated ERISA regulations" by not providing adequate notice regarding the basis for its denial of Plaintiff's applications. The one case Plaintiff cites in support of this assertion is, however, not on point. In that case, and in the cases cited therein, the notice deficiencies "'meant that plaintiff . . . was not apprised of the deficiency in his claim' and was not told 'he could attempt to correct [it] with additional evidence upon review.'" Dawes v. First UNUM Life Ins. Co., No. 91 Civ. 0103, 1992 WL 350778 at *3 (S.D.N.Y. Nov. 13, 1992) (citing Vanderklok v. Provident Life and Acc. Ins. Co., 956 F.2d 610, 617 (6th Cir. 1992)). As a factual matter, this Court finds that Defendant provided detailed reasons for the denials, and informed Plaintiff of his right to appeal the decision and to supplement his application with additional information. (A.R. 430-31.) Plaintiff's allegations of inadequate notice therefore do not merit this Court's considering evidence outside the administrative record.

Court will therefore consider only evidence in the administrative record in evaluating whether Defendant's decisions denying Plaintiff's applications for disability benefits were arbitrary and capricious.

**D. The Arbitrary and Capricious Standard of Review**

In reviewing the decision of an ERISA plan administrator under the arbitrary and capricious standard, a district court may not "substitute [its] own judgment for that of the plan administrator as if [it] were considering the issue of eligibility anew." Celardo v. GNY Automobile Dealers Health & Welfare Trust, 318 F.3d 142, 146 (2d Cir. 2003). See also Jordan v. Ret. Comm. of Rensselaer Polytechnic Inst., 46 F.3d 1264, 1271 (2d Cir. 1995) ("[t]he Court may not upset a reasonable interpretation by the administrator."). Rather, the administrator's denial of an ERISA claim must be upheld unless "it is without reason, unsupported by substantial evidence or erroneous as a matter of law,'" Pagan v. NYNEX Pension Plan, 52 F.3d 438, 442 (2d Cir. 1995). Substantial evidence is "such evidence that a reasonable mind might accept as adequate to support the conclusion reached by the [administrator and] . . . requires more than a scintilla but less than a preponderance." Miller v. United Welfare Fund, 72 F.3d 1066, 1072 (2d Cir. 1995)(internal quotations omitted).

Even under this deferential standard of review, a plan administrator's conflict of interest, even if insufficient to qualify the decision for *de novo* review, may be considered as a factor in determining whether the administrator's decision was arbitrary and capricious. Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 115 (1989); see also Jordan, 46 F.3d 1264. Nevertheless, a financial interest does not in and of itself create a conflict of interest for the plan administrator. Id. at 1274 ("the simple fact that the administrator of a plan . . . happens to be 'an arm of the employer' does not in itself create a conflict of interest." (internal citations omitted)).

**E. Defendant's Denial of Plaintiff's Group Claim**

Plaintiff contends Defendant's decision was arbitrary and capricious because he is clearly disabled and because Defendant's investigation failed to reveal the severity of his medical problems. In support of this proposition, Plaintiff relies primarily on evidence that was gathered during discovery in the course of this litigation, including depositions of his physicians, of First UNUM employees, and of Plaintiff himself. These documents are all outside the administrative record.[6] While the Court

---

[6] Similarly, the parties cite only outside evidence to support their

considered such evidence in determining whether Defendant
operated under a conflict of interest in order to establish
the appropriate standard of review, the Court is confined
to the administrative record in evaluating whether
Defendant's decision was arbitrary and capricious. See
Miller v. United Welfare Fund, 72 F.3d 1066, 1071 (2d Cir.
1995) (holding that a reviewing court may generally
consider only information found in the administrative
record).[7] Although outside evidence will not be considered,
Plaintiff also refers to several alleged deficiencies
included in the administrative record that Plaintiff argues
render Defendant's decision arbitrary and capricious.

Plaintiff argues that Defendant's decision should be
overturned because it failed to conduct an adequate
investigation of his Group Claim. He emphasizes that "the
only physicians who have examined Mr. McCauley and his
medical history conclude that he is totally disabled."
(Pl.'s Reply 2.) Plaintiff further notes that Defendant

opposing positions regarding why Plaintiff filed the Group Claim in
February 1995. Defendant asserts that Plaintiff stopped working for
financial rather than health reasons, and Plaintiff counters that his
primary reason for filing was his health and that any financial
considerations were legitimate because the Group Plan incorporates
decreases in salary in its definition of disability. The facts on which
the parties rely were not part of the administrative record, nor is
there any indication that the administrator considered Plaintiff's
motive for filing his Group Claim in deciding the application. This
Court therefore will not address this argument in evaluating whether
the administrator's decision was arbitrary and capricious.
[7] In addition, evidence submitted by Plaintiff of Defendant's settlement
with state Attorneys General will not be considered because it is
outside the administrative record.

"never had any doctor review Mr. McCauley's file" and "did not request . . . a complete set of Mr. McCauley's medical records." (Pl.'s Mot. for Summ. J. 1,4.) Moreover, Plaintiff argues that Defendant disregarded information contained in a document entitled "Medical Issues" that he submitted with his appeal of the Group Claim denial "because it was not officially signed by an attending physician." (Pl.'s Mot. for Summ. J. 8.) Finally, Plaintiff also argues that Defendant unreasonably concluded that Plaintiff's occupation was that of a tax attorney and "completely failed to investigate his occupational duties." (Pl.'s Mot. for Summ. J. 5; Pl.'s Reply 3.)

This Court has reviewed the administrative record and finds that Defendant's decision denying Plaintiff's Group Claim was not arbitrary and capricious. Under this standard of review, the administrator's decision must be upheld unless "it is without reason, unsupported by substantial evidence or erroneous as a matter of law,'" Pagan, 52 F.3d at 442. In this case, Defendant's decision is both reasonable and supported by substantial evidence.

First UNUM's medical department reviewed the information submitted by Plaintiff and requested additional details from Plaintiff's treating physician. (A.R. 430-32.) Specifically, Defendant sought the opinion of Dr.

Dougherty, Plaintiff's treating physician, on specific questions regarding Plaintiff's abilities. It also asked for copies of Plaintiff's medical records during relevant time periods. (A.R. 344, 402.) After receiving this information, First UNUM reasonably concluded that, while these documents indicated that Plaintiff experienced pain and nausea that imposed some restrictions and limitations on his capacity to work, he was not disabled within the meaning of the policy.

Contrary to Plaintiff's assertion that all the medical information before the administrator demonstrated that he was disabled, documents submitted by Plaintiff's own physician indicated that Plaintiff was not fully disabled. (A.R. 345.) In its evaluation of the claim, and ultimately in its decision denying benefits, First UNUM determined that Plaintiff was not disabled by relying on Dr. Dougherty's medical findings:

> Based on the medical information submitted by Dr. Dougherty . . . it is our determination that the medical information does not support an impairment of such severity that would preclude your ability to perform your occupation . . . These restrictions and limitations would not prevent you from performing the material duties of your sedentary occupation.[8]

---

[8] Plaintiff disputes the characterization of his occupation as sedentary, but the only evidence to the contrary in the administrative record is Plaintiff's job evaluation from 1989 -- well before his cancer diagnosis, and before he changed positions with Sotheby's and moved to Bermuda. (A.R. 456.) He did not include additional information about his job duties during the time period relevant to his application, that is, November 1994.

(A.R. 437.) Thus, the facts here demonstrate that Defendant
not only credited Plaintiff's physician's findings but
actually based its decision in part on those findings.[9] In
addition, Defendant's contemporaneous notes indicate that
Defendant did not disregard the Medical Issues document
simply because it was not signed by Plaintiff's physician.
Rather, Defendant reasonably determined that Dr. Dougherty
had been familiar with that same information at the time he
wrote the letter elucidating Plaintiff's work restrictions,
and thus that the document did not constitute new
information for purposes of evaluating Plaintiff's
application. (A.R. 468.)

    Furthermore, because Plaintiff's application named his
occupation as "tax attorney," Defendant reasonably
evaluated his claim for disability benefits by determining
whether he could perform the functions of a tax attorney.
During the course of its investigation Defendant received a
communication from Sotheby's demonstrating that Plaintiff
had advertised his services as a tax attorney while his
disability application was pending. It also relied on this
information in denying Plaintiff's application for long

---

[9] Moreover, the Supreme Court has held that a plan administrator need
not defer to an applicant's physician's findings. See Black and Decker
Disability Plan v. Nord, 538 U.S. 822, 834 (2003) ("courts have no
warrant to require administrators automatically to accord special
weight to the opinions of a claimant's physician . . .").

term disability benefits.

Given this, as well as the weight of the medical information, this Court finds that Defendant's decision denying Plaintiff's group claim was not arbitrary and capricious. Nor has Plaintiff shown that Defendant operated under a conflict that rendered its decision arbitrary and capricious.  Rather, Defendant's denial of Plaintiff's Group Claim was reasonable and was supported by substantial evidence in the administrative record.

**F. Defendant's Denial of Plaintiff's Conversion Claim**

Defendant also moves for judgment on the administrative record regarding Plaintiff's Conversion Claim. Plaintiff in turn challenges Defendant's interpretation of the Conversion Policy and seeks summary judgment granting him benefits under that policy.

When applying an arbitrary and capricious standard of review, "the Court may not upset a reasonable interpretation by the administrator." Jordan v. Ret. Comm. of Rensselaer Polytechnic Inst., 46 F.3d 1264, 1271 (2d Cir. 1995). A plan administrator's decision will be upheld under that standard of review unless "it is without reason, unsupported by substantial evidence or erroneous as a matter of law,'" Pagan v. NYNEX Pension Plan, 52 F.3d 438, 442 (2d Cir. 1995).

Under the terms of the Conversion Policy, "[t]he
conversion privilege is not available to any individual"
when that individual "no longer belongs to a class of
employees eligible for coverage under the policy." (A.R.
186.) In order to be eligible for the policy, an employee
must have ended active employment with the employer no more
than 31 days prior to applying for the Conversion Policy.
(A.R. 186.) The question presented here is whether
Defendant's interpretation, that Plaintiff "no longer
belong[ed] to a class of employees" eligible to apply for
the Conversion Policy, was reasonable.

It is undisputed that Plaintiff's final day of work at
Sotheby's was on or about November 26, 1994. It is also
undisputed, however, that Sotheby's continued remitting
insurance premium payments to First UNUM on Plaintiff's
behalf through December 31, 1995, and that when Plaintiff
applied for coverage under the Conversion Policy the
"effective date" -- that is, the employment termination
date -- was listed as December 31, 1995. Sotheby's
represented to Plaintiff that he was eligible to apply for
the Conversion Policy, and First UNUM initially accepted
Plaintiff's premium payments for the Conversion Policy.
After Plaintiff filed his application for long term
benefits under the Conversion Policy, Defendant learned

during the course of its investigation that Plaintiff had
not returned to work at Sotheby's since November 1994.

In denying Plaintiff's Conversion Claim, First UNUM
explained that it had "determined that [Plaintiff was] not
in "active employment as of the date that [he] applied for
coverage under the Conversion Policy" because he had not
worked at Sotheby's since November 1994. Thus, according to
First UNUM's interpretation, Plaintiff was "ineligible for
conversion" when he applied for the Conversion Policy in
January 1996, despite Sotheby's failure to notify him and
its continued payment of the plan premiums on his behalf.

This interpretation is not unreasonable, nor was it
unsupported by substantial evidence or erroneous as a
matter of law. Pagan, 52 F.3d at 442. Defendant reasonably
concluded that Plaintiff's failure to return to work at
Sotheby's constituted the end of Plaintiff's active
employment with Sotheby's. Sotheby's representations misled
Plaintiff, but, as Defendant's decision denying Plaintiff's
application for benefits noted, the Policy explicitly
states that "[u]nder no circumstances will the policyholder
[i.e., the employer] be deemed the agent of the Company
without a written authorization." (A.R. 110.) Defendant's
decision denying Plaintiff's Conversion Claim on the basis
that Plaintiff was never actually eligible for the

Conversion Policy was therefore not arbitrary and capricious.

## G. Other

Plaintiff's other claims are without merit, and Plaintiff's request for attorneys' fees is denied. Although a court may award reasonable attorneys' fees "to either party" in an ERISA action, 29 U.S.C. §1132(g)(1), none of the factors that mitigate in favor of such an award applies in this case. See Chambless v. Masters, Mates, & Pilots Pension Plan, 815 F.2d 869, 871 (2d Cir. 1987).

### III. Conclusion

For the reasons set forth above, Defendant's motion for judgment on the administrative record is GRANTED on all counts and Plaintiff's cross-motion for summary judgment is DENIED. Plaintiff's Complaint is dismissed. The Clerk is directed to enter judgment in favor of Defendant and against Plaintiff dismissing the complaint.

SO ORDERED.

Dated: October 4, 2006

Lawrence M. McKenna
U.S.D.J.

31